IN RE: Appeal of Frank H. Harper, Candidate, Democratic Primary for Greene County Commissioner May 3, 1994; Rom W. (Billy) Beaman, III, Appellee

No. COA94-1143

(Filed 16 May 1995)

**Elections § 86 (NCI4th)— ineligible voters—consideration of testimony in contested election**

While the Court believes that public policy should not allow consideration of the affidavits or testimony of ineligible, or illegal, voters to influence the outcome of an election, the Court

must follow the established law of this state which holds that such testimony is proper.

**Am Jur 2d, Elections §§ 298-302.**

Judge GREENE concurring in the result.

Appeal by Frank H. Harper and the State Board of Elections from order entered 6 September 1994 by Judge George R. Greene in Wake County Superior Court. Heard in the Court of Appeals 7 April 1995.

*Beaman and King, P.A., by Stephen L. Beaman and Charlene Boykin King, for petitioner-appellee Rom W. Beaman, III.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Charles M. Hensey, for appellant State Board of Elections.*

*Tharrington, Smith & Hargrove, by Michael Crowell and Jaye P. Meyer, for appellant Frank H. Harper.*

LEWIS, Judge.

This appeal arises out of a complaint filed with the Greene County Board of Elections (hereinafter the "County Board") by Frank H. Harper, a candidate for re-election to the Greene County Board of Commissioners. The undisputed facts are as follows: Six candidates, including Beaman and Harper, ran in the 3 May 1994 Democratic primary for the Greene County Board of Commissioners. Each voter could vote for three candidates, and the three having the highest vote totals would be the Democratic nominees in the general election. After a recount, conducted by the County Board on its own initiative, the vote totals for the candidates were:

| | |
|---|---|
| Sanford N. Corbett | 1,485 |
| Jasper E. Ormond | 1,395 |
| Rom W. (Billy) Beaman, III | 1,316 |
| Frank H. Harper | 1,303 |
| J. Ivey Smith | 872 |
| Early Whaley | 330 |

On 9 May 1994, Harper filed a complaint with the County Board, alleging that certain ineligible voters were allowed to vote in the election. The County Board held a hearing and found that thirteen ineligible voters (8 registered Republican and 5 registered unaffiliated) cast ballots in the primary. At the hearing, the County Board considered

**IN RE APPEAL OF HARPER**

[118 N.C. App. 698 (1995)]

the affidavits of three of the ineligible voters. Each of the three stated that he or she had voted for both Beaman and Harper. When these three votes were subtracted from the totals of Beaman and Harper, Beaman still led Harper by thirteen votes. Therefore, the County Board found, no matter how the remaining ten ineligible voters voted, when those ten votes were excluded, Beaman could not have finished less than three votes ahead of Harper. The County Board concluded, pursuant to N.C. Admin. Code tit. 8, r. 2.0005(b)(2)(C) (November 1984), that the complaint should be dismissed because there was not substantial evidence that the alleged violation, irregularity, or misconduct was sufficiently serious to cast doubt on the results of the election.

Harper then appealed to the State Board of Elections (hereinafter the "State Board"). After hearing the arguments of counsel, the State Board adopted the findings of the County Board, but ordered that a new election be conducted between Beaman and Harper. Beaman petitioned the Superior Court of Wake County for review of the State Board's decision. The trial court reversed the order of the State Board and reinstated the County Board's order dismissing Harper's complaint. From the order of the trial court, Harper and the State Board appeal.

The standard and scope of review for the trial court of an order of the State Board is found in the provisions of Chapter 150B of the General Statutes, the Administrative Procedure Act. *In re Brown*, 56 N.C. App. 629, 630, 289 S.E.2d 626, 626-27, *cert. denied and appeal dismissed*, 305 N.C. 760, 292 S.E.2d 574 (1982). The trial court may reverse the agency's decision if the substantial rights of the petitioner may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1991). The task of this Court in reviewing the trial court is to determine (1) whether the trial court exercised the appropriate scope of review and, if so, (2) whether the trial court did so properly. *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994). Here, the trial court concluded that the order of the State Board was not supported by substantial evidence, was affected by other error of law, or was arbitrary and capricious. This was the appropriate scope of review, and for the following reasons, we conclude that the trial court properly exercised the review.

The State Board's apparent basis for ordering a new election was that it did not agree with the propriety of the County Board's reliance on the affidavits of the ineligible voters to show the effect of those votes on the outcome of the election. While we agree that public policy should not allow consideration of the affidavits or testimony of ineligible, or illegal, voters to influence the outcome of an election, we must follow the established law of this state which holds that such testimony is proper. We therefore hold that the trial court was correct in reversing the order of the State Board.

In *Boyer v. Teague*, 106 N.C. 576, 625, 11 S.E. 665, 679 (1890), our Supreme Court established that "[a]s between contestants for office . . . the testimony of the elector [i.e., the voter], if pertinent and relevant, is always admissible." In fact, the Court held, while an honest voter may not be compelled to disclose for whom he voted, as such compulsion would intrude upon the sanctity of the secret ballot system, an illegal voter may be so compelled, save an invoking of his right against self-incrimination. *Id.* Harper argues, however, that *Boyer* is not controlling because it was decided before the current election statutes with secret ballot provisions were adopted. We do not believe this fact to be dispositive, as the Court in *Boyer* made specific reference to the importance of the secret ballot system in its discussion of whether a voter could disclose for whom he voted. *See id.* Further, in *Jenkins v. State Board of Elections*, 180 N.C. 169, 104 S.E. 346 (1920), the Supreme Court, in upholding the constitutionality of the absentee voters law, held that the privilege to vote by secret ballot does not prevent a voter from disclosing for whom he voted: "Public policy requires that the veil of secrecy shall be impenetrable *unless the voter himself voluntarily determines to lift it." Id.* at 171-72, 104 S.E. at 347-48 (citing *Boyer*, 106 N.C. at 625, 11 S.E. at 679). Thus, the law of this state is that a voter may disclose for whom he

voted. Harper points to no North Carolina case which holds to the contrary, and we have found none.

When an unsuccessful candidate seeks to invalidate an election, the burden of proof is on him to show that he would have been successful had the irregularities not occurred. *In re Clay County General Election*, 45 N.C. App. 556, 570, 264 S.E.2d 338, 346, *disc. review denied*, 299 N.C. 736, 267 S.E.2d 672 (1980). In this case, Harper did not come forward with any evidence to show that he would have been successful had the thirteen ineligible voters not been allowed to vote. In fact, it was Beaman who presented the affidavit evidence which showed that Harper would not have been successful. Thus, Harper failed to meet his burden of proof. There was no evidence before the State Board to support its decision to reverse the County Board. Further, the State Board erred as to an issue of law when it concluded that the County Board should not have considered the affidavits of the ineligible voters. The State Board's order was therefore unsupported by substantial evidence, was arbitrary and capricious, and was affected by other error of law. The superior court correctly reversed the State Board's order.

We wish to emphasize that, although we are bound to follow the established law of this state, we believe that public policy would require us to reach different conclusions on the issues in this case. First, a person who has voted illegally in an election should not be allowed to testify for which candidate he voted and thereby influence the outcome.

> If the voter who cast an illegal vote is allowed to testify for whom he voted, a golden opportunity for further fraud exists because the corrupt voter might well identify the opposing candidate as his pick and, if believed, the victimized candidate would be victimized again—the illegal vote would be counted twice. For this reason, some commentators have argued that no voter should be allowed to testify about his vote.

Gary R. Correll, *Elections—Election Contests in North Carolina*, 55 N.C.L. Rev. 1228, 1237 (1977) (citing George W. McCrary, *A Treatise on the American Law of Elections* §§ 485, 491 (4th ed. 1897)). We see no distinction between the present situation and the Court's discussion in *Boyer* as to the evils in allowing voters who were erroneously prevented from voting to testify how they would have voted: " '[I]t would obviously be dangerous to receive and rely upon their subsequent statements as to their intentions, after it is ascertained pre-

**IN RE APPEAL OF HARPER**

[118 N.C. App. 698 (1995)]

cisely what effect their votes would have upon the result.' " *Boyer*, 106 N.C. at 628, 11 S.E. at 680 (quoting Cooley, *Constitutional Limitations* 620-21).

Because illegal voters should not be allowed to testify in an election contest as to how they cast their vote, we consequently do not believe that the unsuccessful candidate's burden should be to show that he would have won had the illegal voters not participated. This burden necessarily requires a determination of which candidate received the illegal votes, which in turn requires the unsuccessful candidate to present the testimony of the illegal voters as to how they voted. To invalidate an election, the unsuccessful candidate should only be required to show that the number of illegal votes is greater than or equal to the number of votes separating him and the winner. Under this rule, the outcome of the election would not be dependent on the testimony of illegal voters. A new election should then be held between the candidates affected.

Nevertheless, for the reasons stated above, we must affirm the order of the trial court. We note that our holding makes it unnecessary to address Beaman's cross-assignment of error.

Affirmed.

Judge MARTIN, Mark D. concurs.

Judge GREENE concurs in the result.

Judge GREENE concurring in the result.

I fully concur with the holding of the majority that an unsuccessful candidate who seeks to invalidate an election has the burden of showing that he would have been successful in the absence of some proven irregularity. *In re Clay*, 45 N.C. App. at 570, 264 S.E.2d at 345-46. I further agree that the unsuccessful candidate, in order to meet his burden, may present the testimony of voters in that election. *Boyer*, 106 N.C. at 625, 11 S.E. at 330-31. Finally, I agree that in this case the unsuccessful candidate, Frank H. Harper, having shown some irregularities, has failed in his burden of showing that those irregularities altered the result of the election. Thus, the order of the superior court dismissing the complaint of Frank H. Harper must be affirmed.

I do not join with the majority in its expression of opinion that this result and the law on which it is based represents bad public policy. The judicial system regularly has to sort out truthful and untruthful testimony, and I know of no reason why it cannot be done in cases of this type. To concede our inability to do so would require new elections in every case upon a mere showing that there has been some irregularity that *may possibly* have affected the election. This, in my opinion, would not represent sound public policy. Furthermore, it is inconsistent with the law of this state which holds that evidence based on "conjecture, surmise and speculation" is not sufficient to support a verdict. *Hinson v. National Starch & Chem. Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990).