IN RE APPEAL OF JAMES E. RAMSEUR AND R. GENE LENTZ FROM THE DECISION
OF THE CABARRUS COUNTY BOARD OF ELECTIONS AND THE PROTEST OF
THE CITY OF CONCORD MIXED BEVERAGE REFERENDUM CONDUCTED
MAY 3, 1994

No. COA94-1349

(Filed 7 November 1995)

**1. Elections § 105 (NCI4th)— ten ineligible voters—refusal
to disclose vote—failure to show effect on outcome—referendum not invalidated**

In an action to invalidate an election or referendum, the burden of proof is upon the unsuccessful party to show that the outcome of the election or referendum would have been different absent irregularities in the voting process. In this case, appellants were unable to meet their burden where a mixed beverage referendum passed by three votes; ten voters admitted their ineligibility but only five would disclose how they voted; and it was therefore impossible to determine whether those ten votes affected the outcome of the referendum.

**Am Jur 2d, Elections §§ 342, 347, 349.**

**2. Elections § 93 (NCI4th)— voting irregularities alleged—
failure to consider evidence on all irregularities—error**

In failing to consider evidence with regard to other allegations of voting irregularities, including complaints regarding voting equipment and counting and recounting of votes, the State Board of Elections denied appellants the right to be heard on these issues and thus violated their right to procedural due process.

**Am Jur 2d, Elections § 318.**

**3. Elections § 98 (NCI4th)— County Board of Elections' decision not adopted by State Board—failure to state reasons—error**

The State Board of Elections erred in failing to state specific reasons why it did not adopt the County Board's recommended decision of a new referendum in accordance with N.C.G.S. § 150B-51(a).

**Am Jur 2d, Elections §§ 318, 358.**

Appeal by petitioners from an order entered 13 September 1994 by Judge George R. Greene in the Wake County Superior Court. Heard in the Court of Appeals 12 September 1995.

*Johnson, Mercer, Hearn & Vinegar, P.L.L.C., by Charles H. Mercer, Jr., Shawn D. Mercer and Cecil R. Jenkins, Jr., for petitioner appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Charles M. Hensey, for the State Board of Elections, appellee.*

*Everett Gaskins Hancock & Stevens, by Hugh Stevens, Paul C. Ridgeway and C. Todd Williford, for respondent appellees.*

SMITH, Judge.

Appellants appeal a superior court order affirming a decision of the State Board of Elections which denied the Cabarrus County Board of Election's recommended decision that a new election be conducted with regard to the City of Concord Mixed Beverage Referendum.

The facts and procedural history of this case are as follows: A mixed beverage referendum was conducted in and for the City of Concord on 3 May 1994. Unofficial results showed 5,002 votes cast in favor of the sale of mixed beverages and 5,003 votes cast against the sale of mixed beverages. The Cabarrus County Board of Elections (County Board) conducted a recount on 5 May 1994, which showed 5,000 votes cast in favor of the sale of mixed beverages and 4,997 votes cast against.

As of 7 May 1994, 154 complaints had been filed regarding the referendum. The County Board held a preliminary hearing on 17 May 1994 and found probable cause as to 27 of those complaints. The complaints involved four areas of alleged election law irregularities and violations: (1) ineligible persons having voted in the referendum; (2) eligible voters having been denied the right to vote in the referendum; (3) violations or irregularities relating to voting equipment; and (4) violations or irregularities relating to the counting or recounting of ballots.

At a hearing concerning the referendum held on 13 June 1994, the County Board found that ten ineligible persons had voted in the referendum. Thus, there existed "substantial evidence to believe that

violations of the election law, other irregularities and/or misconduct did occur and were sufficiently serious to cast doubt upon the apparent results of the Referendum." When the ten ineligible voters were questioned as to how they voted, appellants objected. However, the County Board allowed each to confide *in camera* how they had voted. Five declined to say how they voted, three said they voted in favor of the proposition and two said they voted against it.

As to the alleged complaints that eligible voters had been denied the right to vote in the referendum, the County Board found there was not substantial evidence that any violations or irregularities had occurred, and dismissed those complaints. As to alleged complaints regarding voting equipment and counting and recounting ballots, the County Board concluded those issues were moot, in that violations or irregularities had been sufficiently shown with regard to ineligible voters to cast doubt upon the referendum results. Based upon its findings and pursuant to N.C. Admin. tit. 8, r. 2.0005(b)(2)(E) and (b)(3) (November 1984), the County Board sent its recommended decision that a new election be held to the State Board of Elections (State Board).

James E. Ramseur and R. Gene Lentz, proponents of the referendum and appellees herein, filed notice of appeal from the County Board's recommended decision to the State Board on 16 June 1994, pursuant to N.C. Admin. tit. 8, r. 2.0006(a) (November 1984). In its 22 June 1994 order, the State Board adopted the findings of the County Board, but denied the recommended decision for a new referendum. On 21 July 1994, J. Rodney Quesenberry and David S. Snyder, opponents of the referendum and appellants herein, appealed the State Board's decision to the superior court pursuant to N.C. Gen. Stat. § 150B-43 (1993). The superior court affirmed certification of the referendum results and dismissed appellants' appeal. From that decision, appellants appealed to this Court.

Appellate review of a final agency decision is governed by N.C. Gen. Stat. § 150B-51 (1993), which provides that an appellate court may

reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

**IN RE APPEAL OF RAMSEUR**

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b) (1991). *See Brooks v. Ansco & Associates*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994). The proper manner of review by this Court depends upon the particular issues presented on appeal. *Id.* (citing *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991)). If it is alleged that the agency's decision was based on an error of law, then *de novo* review is required. If, however, it is alleged that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test. *Id.* (citing *O.S. Steel Erectors v. Brooks, Comm'r of Labor*, 84 N.C. App. 630, 634, 353 S.E.2d 869, 872 (1987)).

In their appeal to this Court, appellants allege that the State Board's decision is based upon unlawful procedure, which denies their right to procedural due process. Because appellants argue an error of law under N.C. Gen. Stat. § 150B-51(b)(3), we apply a *de novo* standard in reviewing this issue. *Brooks, Com'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988).

[1] The referendum results, upon recount, were 5,000 votes in favor and 4,997 votes against liquor by the drink. The County Board determined in its findings, adopted by the State Board, that ten ineligible voters cast ballots in the referendum. Appellants argue that when the number of illegal votes in a referendum or election, in this case ten votes, exceeds the vote margin, in this case three votes, a new election is required. Appellants argue that the ten illegal votes constitute irregularities sufficient to alter the result of the referendum. They contend that, if the illegal votes *could* have altered the results of the referendum, a new election is required. In support of their argument, appellants assert that in this case there is no way to ascertain what the results of the referendum would have been absent the illegal votes, because five of the ten illegal voters refused to disclose their vote. Therefore, appellants argue, because there is no way to determine what the results of the referendum would have been absent the

irregularities, a new referendum should have been ordered by the State Board.

North Carolina law on this issue is well settled. An election or referendum result will not be disturbed for irregularities absent a showing that the irregularities are sufficient to alter the result. *Gardner v. Reidsville*, 269 N.C. 581, 585, 153 S.E.2d 139, 144 (1967); *In Re Clay County General Election*, 45 N.C. App. 556, 570, 264 S.E.2d 338, 346, *disc. review denied*, 299 N.C. 736, 267 S.E.2d 672 (1980). The burden of proof is upon the unsuccessful candidate or the opponents of a referendum to show that they *would* have been successful had the irregularities not occurred. *In Re Election of Commissioners*, 56 N.C. App. 187, 190, 287 S.E.2d 451, 454 (1982); *In Re Appeal of Harper*, 118 N.C. App. 698, 702, 456 S.E.2d 878, 880, *disc. review denied*, 340 N.C. 567, 460 S.E.2d 317 (1995). In this case, appellants have failed to meet their burden. There were 5,000 votes cast in favor of the referendum and 4,997 votes were cast against it. Three of the illegal voters said they had voted in favor of the referendum, two said they voted against it, and five declined to divulge their vote. In order to meet their burden of proof appellants must be able to show that the referendum would have failed if the voting irregularities had not occurred. Here, four out of the five illegal voters who refused to disclose their votes would have had to testify that they voted in favor of the referendum in order for appellants to prevail.

Appellants criticize this rule because it allows illegal voters to testify after an election providing the opportunity for fraud because " 'the corrupt voter might well identify the opposing candidate as his pick and, if believed, the victimized candidate would be victimized again—the illegal vote would be counted twice. For this reason, some commentators have argued that no voter should be allowed to testify about his vote.' " *In Re Appeal of Harper*, 118 N.C. App. at 702, 456 S.E.2d at 881 (quoting Gary R. Correll, *Elections—Election Contests in North Carolina*, 55 N.C.L. Rev. 1228, 1237 (1977) (citation omitted)). We are bound by the established case law of this state which requires the unsuccessful party show that the results of an election or referendum *would* have been different if the irregularities of which he complains had not occurred. In order to show that the illegal votes would have changed the result of the election, appellants in the instant case must show how four of the five remaining ineligible voters voted. Here, five of the ineligible voters refused to disclose their vote and appellants did not attempt to compel those voters to testify.

At this point, there is no way to determine whether, absent the ten illegal votes, the referendum would have failed.

The North Carolina Supreme Court has stated that:

> An honest elector who has observed the law enjoys the privilege, which is entirely a personal one, of refusing to disclose, even under oath as a witness, for whom he voted. . . . If an illegal voter can claim the privilege at all, it is because he finds shelter under the very different principle that he cannot be compelled to criminate himself.

*Boyer v. Teague*, 106 N.C. 576, 625, 11 S.E. 665, 679 (1890). In this case, all ten ineligible voters conceded that they voted illegally. However, appellants did not object to the five voters' failure to testify how they voted and did not attempt to compel such testimony. Thus, whether the five ineligible voters could have been compelled to reveal how they voted is not an issue before us. Appellants did not meet their burden under present law, therefore, this assignment of error is overruled.

**[2]** Appellants next assign as error the superior court's failure to overturn the State Board's decision on the ground that the State Board failed to consider evidence with regard to the other allegations of voting irregularities, including complaints regarding voting equipment and counting and recounting of votes. By failing to take evidence on these issues, the State Board based its decision upon improper procedure in violation of appellant's procedural due process rights. N.C. Gen. Stat. § 150B-51(b)(3). If petitioner argues that the agency's decision is in violation of a constitutional provision, *de novo* review by this Court is required. *Brooks*, 114 N.C. App. at 716, 443 S.E.2d at 92.

In its order, the State Board adopted the findings of the County Board, but failed to follow the County Board's recommended decision that a new referendum be conducted. The State Board did not request a supplement to the record, receive additional evidence, remand the matter to the County Board or hold its own hearing, with regard to the remaining complaints. In so doing, the State Board denied appellants the right to be heard on these issues and violated their right to procedural due process.

> " 'Due process' has a dual significance, as it pertains to procedure and substantive law. As to procedure it means 'notice and an opportunity to be heard and to defend in an orderly proceed-

ing adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause.' 12 Am. Jur. 267, § 573; 16 C.J.S., Constitutional Law, § 569, p. 1156."

*State v. Smith*, 265 N.C. 173, 180, 143 S.E.2d 293, 299 (1965) (quoting *Skinner v. State*, 189 Okla. 235, 238, 115 P. 2d 123, 126, *reversed on other grounds*, 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655, conformed to 195 Okla. 106, 155 P. 2d 715.) In finding that irregularities with regard to the ineligible voters were sufficient to require a new election, the County Board did not hear testimony about the other irregularities and reserved comment on those issues. The County Board concluded that these issues were moot by virtue of the fact that it considered the voting of the 10 ineligible voters "sufficiently serious to cast doubt upon the result of the referendum" and recommended a new election be held. In addition the recommended decision of the County Board specifically ordered that no action be taken with regard to these complaints "pending final determination by the State Board on [the County Board's] determination and recommendation." Thus, appellants never had an opportunity to be heard with regard to these issues.

Appellees in this case argue that appellants should have appealed the County Board's failure to reach the other issues to the State Board. However, according to N.C. Admin. Code tit. 8, r. 2.0006 (a)(3) (November 1984), a county board of election decision may be appealed to the state board by a person participating in the hearing, who has been adversely affected by the county board's decision. In this case, a "decision" regarding the other irregularities had not been made by the County Board, and appellants were not "adversely affected" by the County Board's decision dealing with ineligible voters, as the Board recommended a new referendum. Appellants had no reason to appeal from the County Board's recommended decision because the result of that decision was favorable to them. When it denied a new referendum, the State Board should have either taken additional evidence, conducted its own hearing, or remanded the remaining issues to the County Board for further evidence and findings. The alleged irregularities relating to voting equipment, and counting and recounting of votes, which were not addressed by the Board, if proven, were sufficient to change the outcome of the referendum.

The State Board should have considered all alleged irregularities and their effect. This is the only manner in which a determination could be made that all alleged irregularities would or would not alter

**IN RE APPEAL OF RAMSEUR**

[120 N.C. App. 521 (1995)]

the results of the referendum. Because appellants were denied a right to be heard on these issues, the State Board's decision was affected by error of law, and we must reverse and remand the case for hearings or further remand to the County Board on the remaining complaints of irregularities. The State Board may consider new evidence in accordance with the provisions of N.C. Admin. Code tit. 8, r. 2.0007 (a)(2-5) (November 1984).

[3] Appellants also assign as error the State Board's failure to state specific reasons why it did not adopt the County Board's recommended decision of a new referendum in accordance with N.C. Gen. Stat. § 150B-51(a). We note that the State Board of Elections is an independent state agency, N.C. Gen. Stat. § 163-28 (1991), and is therefore, subject to the Administrative Procedure Act, Chapter 150B. N.C. Gen. Stat. § 150B-51(a) provides in pertinent part:

> If the court determines that the agency did not state specific reasons why it did not adopt a recommended decision, the court shall reverse the decision or remand the case to the agency to enter the specific reasons.

If, in the future, the State Board of Elections determines that it will not adopt the recommended decision of a County Board, it should include in its order specific reasons for such decision.

In sum, we conclude that in an action to invalidate an election or referendum, the burden of proof is upon the unsuccessful party to show that the outcome of the election or referendum would have been different absent irregularities in the voting process. We hold that in failing to reach other voting irregularity complaints made by appellants, the State Board of Elections denied appellants the right to be heard on these issues. The State Board should have taken evidence on those issues or remanded to the County Board and also should have stated specifically why it denied the County Board's recommended decision to conduct a new referendum. In failing to proceed as herein indicated, the State Board procedure encourages fragmentary appeals. Based upon the foregoing, we decline to address appellants' other assignments of error. We reverse the order of the trial court and remand for further proceedings in accordance with this opinion.

Reversed and remanded.

Judges JOHNSON and GREENE concur.