JAMES B. MULLINS, Petitioner v. N.C. CRIMINAL JUSTICE EDUCATION AND TRAINING STANDARDS COMMISSION, Respondent

No. COA96-388

(Filed 18 February 1997)

**1. Administrative Law and Procedure § 10 (NCI4th)— law enforcement officer certification—Commission rules—not in excess of statutory authority**

The adoption and implementation by the Criminal Justice Education and Training Standards Commission of rules used in this case to revoke petitioner's law enforcement officer certifica-

MULLINS v. N.C. CRIM. JUSTICE EDUC. AND TRAIN. STDS. COMM.

[125 N.C. App. 339 (1997)]

tion were not in excess of the statutory authority granted to the Commission. The intent of the Legislature was to enhance the criminal justice profession through mandated education, training and standards regarding character and moral fitness and the provisions of Chapter 17C evidence an intent by the Legislature for the Commission to have the authority to ensure professionalism and integrity of criminal justice officers. To effectuate the legislative mandate, the Commission considered what conduct it deemed unacceptable and enacted rules providing that a person may not be certified as an officer if that person has committed or been convicted of a felony, giving the Commission the power to revoke certification of officers who have committed or been convicted of a felony, and defining the commission of an offense as a finding by the Commission or an administrative body that a person performed the acts necessary to satisfy the elements of a specified criminal offense.

**Am Jur 2d, Administrative Law §§ 225 et seq.**

2. **Sheriffs, Police, and Other Law Enforcement Officers § 2 (NCI4th)— law enforcement officer certification—Commission rules—commission of felony—interpretation of criminal statutes**

Rules of the Criminal Justice Education and Training Standards Commission used in this case to revoke petitioner's law enforcement officer certification were not in violation of N.C.G.S. § 150B-19(1) in that the Commission had to interpret and implement the sections of the General Statutes which establish felony offenses in concluding that there was sufficient evidence that petitioner had committed acts necessary to satisfy the elements of felonious larceny and felonious breaking or entering. The adoption of the "commission of an offense" rule does not constitute an "interpretation" of criminal statutes, but is merely an approach used to establish minimum standards regarding the moral character of criminal justice officers. The reference to criminal statutes is solely for the purpose of providing guidance to officers and applicants. Here, the petitioner committed the acts necessary to satisfy the elements of N.C.G.S. § 14-54(a) and N.C.G.S. § 14-72(b) in that he entered the police station with a stolen key with the intent to take the money seized in an arrest without consent and with the intent to deprive the police of the money.

**Am Jur 2d, Sheriffs, Police & Constables §§ 26-36.**

**3. Constitutional Law § 34 (NCI4th)— law enforcement certification—commission of felony—power of Commission to conduct hearings—no constitutional violation**

The trial court properly determined that neither the Criminal Justice Education and Training Standards Commission nor its rules violated petitioner's constitutional rights pursuant to Article IV, Section 3 of the North Carolina Constitution, which provides in part that the General Assembly may vest such judicial powers in administrative agencies as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. The disputed judicial power vested in the Commission is the power to conduct hearings and take administrative action involving revocation of a certification issued by the Commission. The ability to hold hearings is a power that is reasonably necessary for the Commission to accomplish the purposes for which it was created. It is necessary for the Commission to have a means by which to gather evidence and investigate to determine if individuals are complying with statutory provisions.

**Am Jur 2d, Constitutional Law § 339.**

Appeal by petitioner from order entered 19 December 1995 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 6 January 1997.

*John C. Hunter for petitioner appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robin P. Pendergraft, for respondent appellee.*

SMITH, Judge.

On 12 January 1988 respondent, the North Carolina Criminal Justice Education and Training Standards Commission, (the Commission) issued a probationary law enforcement officer certification to petitioner James B. Mullins (petitioner) to enable him to work with the Mount Holly Police Department. Respondent issued a general certification on 12 January 1989. In 1989 Mullins left Mount Holly and continued his law enforcement career with the Belmont Police Department. On or about 1 December 1991, while a law enforcement officer with Belmont, petitioner and other Belmont officers arrested Mark Anthony Bowen. Upon arrest, various items to be used as evidence in the case were seized from Bowen including

approximately $831.00 in United States currency. The money was counted and inventory taken by Officer Gene Thompson, Sergeant Don Johnson, and petitioner. The money was placed in an evidence locker shared by petitioner and Officer Thompson. Thereafter, petitioner experienced financial difficulties and was subsequently dismissed from the Belmont Police Department in April of 1991.

Sometime in April of 1991, after Mullins was no longer employed by the Belmont Police Department, he returned to the department after a shift change, when few officers would be in the building. He entered the building through the back door and went into the Sergeant's office and removed the evidence room key from a desk. Using the key, he opened the evidence room and unlocked his former evidence locker with a duplicate key. He removed an envelope from the locker that contained the money seized in the Bowen criminal case. He locked the evidence locker and room and returned home with the money.

On 6 July 1992, petitioner was indicted for feloniously breaking or entering a building occupied by the Belmont Police Department with the intent to commit the felony of larceny, and for feloniously stealing $831.00 in U.S. currency, such property in the custody and control of the Belmont Police Department. On 3 November 1992, petitioner pled guilty to the misdemeanor offenses of breaking or entering, a violation of N.C. Gen. Stat. § 14-54(a) (1993) and to misdemeanor larceny, a violation of N.C. Gen. Stat. § 14-72(b) (1993). He was sentenced to a term of imprisonment of not less than nor more than two years, which was suspended upon the following conditions: He was to be placed on supervised probation for three years; pay a $60.00 monthly probation supervision fee, $85.00 in costs and $831.00 as restitution; serve sixty days electronic house arrest; and not go on or about the premises of the Belmont Police Department.

By notice dated 30 November 1993, the Commission notified petitioner that the Standards Committee of the Commission had found that "probable cause exist[ed] to believe [petitioner's] certification as a law enforcement officer should be permanently revoked." Petitioner requested an administrative hearing to challenge the Commission's proposed permanent revocation of his certification.

An administrative hearing was held on 8 November 1994 by Administrative Law Judge, Beecher R. Gray. He rendered a proposal for decision, and on 2 June 1995 the Commission adopted the proposed decision permanently revoking petitioner's certification. On 27

July 1995 petitioner filed a petition for judicial review of the final agency decision. On 19 December 1995 the trial court issued an order upholding the final agency decision. From this order petitioner appeals.

Appellate review of a final agency decision is governed by N.C. Gen. Stat. § 150B-51(b) (1995), which provides that the reviewing court may affirm the decision of the agency or remand the case for further proceedings.

It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b).

The proper manner of review by this Court depends upon the particular issues presented on appeal. If it is alleged that the agency's decision was based on an error of law then *de novo* review is required. If, however, it is alleged that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.

*In re Appeal of Ramseur*, 120 N.C. App. 521, 524, 463 S.E.2d 254, 256 (1995) (citations omitted).

[1] Petitioner first argues that the adoption and implementation of the Commission rules at issue are in excess of the statutory authority granted to the Commission. We disagree. Petitioner argues that by adopting and implementing N.C. Admin. Code tit. 12, r. 9A.0103(4) (January 1995) and N.C. Admin. Code tit. 12, r. 9A.0204(a) (August

1995), the Commission exceeded its statutory authority. N.C. Admin. Code tit. 12, r. 9A.0103(4) (January 1995) provides:

"Commission of an offense" means a finding by the North Carolina Criminal Justice Education and Training Standards Commission or an administrative body that a person performed the acts necessary to satisfy the elements of a specified criminal offense.

N.C. Admin. Code tit. 12, r. 9A.0204(a) (August 1995) provides:

The Commission shall revoke the certification of a criminal justice officer when the Commission finds that the officer has committed or been convicted of:

(1) a felony offense: or

(2) a criminal offense for which the authorized punishment included imprisonment for more than two years.

This Court in *General Motors Corp. v. Kinlaw*, 78 N.C. App. 521, 338 S.E.2d 114 (1985), held that administrative agencies have powers expressly vested by statute and implied powers reasonably necessary for the agency to function properly. "In addition to the powers expressly vested in an agency by statute, those powers reasonably necessary for the agency to function properly are implied from the legislature's general grant of authority." *Id.* at 530, 338 S.E.2d at 121 (*citing In re Community Association*, 300 N.C. 267, 280, 266 S.E.2d 645, 654-55 (1980); *Charlotte Liberty Mut. Ins. Co. v. State ex rel. Lanier*, 16 N.C. App. 381, 384, 192 S.E.2d 57, 58 (1972)). "An issue as to the existence of power or authority in a particular administrative agency is one primarily of statutory construction." *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561 (*citing Joseph Burstyn, Inc. v. Wilson,* 303 N.Y. 242, 101 N.E.2d 665 (1951), *rev'd on other grounds*, 343 U.S. 495, 96 L.Ed. 1098 (1952)), *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980).

In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are "the language of the statute, the spirit of the act, and what the act seeks to accomplish."

*Comr. of Insurance v. Rate Bureau,* 300 N.C. at 399, 269 S.E.2d at 561 (citations omitted).

The intent of the Legislature in enacting Chapter 17C was to enhance the criminal justice profession through mandated education, training and standards regarding character and moral fitness. Chapter 17C of the North Carolina General Statutes governs the education and training of criminal justice officers. N.C. Gen. Stat. § 17C-1 (1995) provides:

> The General Assembly finds that the administration of criminal justice is of statewide concern, and that proper administration is important to the health, safety and welfare of the people of the State and is of such nature as to require education and training of a professional nature. It is in the public interest that such education and training be made available to persons who seek to become criminal justice officers, persons who are serving as such officers in a temporary or probationary capacity, and persons already in regular service.

Further, certain powers have been delegated to the Commission by the Legislature in N.C. Gen. Stat. § 17C-6(a) (1995):

> In addition to powers conferred upon the Commission elsewhere in this Chapter, the Commission shall have the following powers, which shall be enforceable through its rules and regulations, certification procedures or the provisions of G.S. 17C-10:
>
> (1) Promulgate rules and regulations for the administration of this Chapter . . . .
>
> \* \* \* \*
>
> (3) Certify, pursuant to the standards that it has established for the purpose, persons as qualified under the provisions of this Chapter to be employed at entry level and retained as criminal justice officers;
>
> \* \* \* \*
>
> (8) Investigate and make such evaluations as may be necessary to determine if criminal justice agencies, schools, and individuals are complying with the provisions of this Chapter; . . .

Also, in N.C. Gen. Stat. § 17C-10(c) (1995) the Legislature addresses the standards for criminal justice officers. In pertinent part the statute provides:

In addition to the requirements of subsection (b) of this section, the Commission, by rules and regulations, shall fix other qualifications for the employment, training, and retention of criminal justice officers including minimum age, education, physical and mental standards, citizenship, good moral character, experience, and such other matters as relate to the competence and reliability of persons to assume and discharge the responsibilities of criminal justice officers, and the Commission shall prescribe the means for presenting evidence of fulfillment of these requirements.

These provisions of Chapter 17C evidence an intent by the Legislature for the Commission to have the authority to ensure professionalism and integrity of criminal justice officers. The Legislature specifically authorized the Commission to prescribe the means for presenting evidence of fulfillment of the required minimum standards including citizenship, good moral character, experience, and other matters as relate to competence and reliability. To effectuate the legislative mandate of establishing qualifications for citizenship, good moral character, competence and reliability the Commission considered what conduct it deemed unacceptable for criminal justice officers and those aspiring to join the criminal justice profession and incorporated the conduct deemed egregious by society by referencing the criminal laws in the administrative rules. As a minimum standard the Commission enacted N.C. Admin. Code tit. 12, r. 9B.0111(a) (December 1987) which provides that a person may not be certified as a law enforcement officer if that person has "committed or been convicted of . . . a felony . . . ." To enforce this standard the Commission adopted N.C. Admin. Code tit. 12, r. 9A.0204(a) (August 1995), which gives the Commission the power to revoke certification of a criminal justice officer if they have committed or have been convicted of a felony. In N.C. Admin. Code tit. 12, r. 9A.0103(4) (January 1995) "the commission of an offense" is defined as a finding by the Commission or an administrative body that "a person performed the acts necessary to satisfy the elements of a specified criminal offense." This method of establishing a standard for certification purposes is within the authority granted to the Commission by the Legislature to ensure the quality and professionalism of law enforcement officers.

[2] Petitioner's second assignment of error is that the Commission rules at issue are in violation of N.C. Gen. Stat. § 150B-19(1) (1995). N.C. Gen. Stat. § 150B-19(1) states, "[a]n agency may not adopt a rule

that does one or more of the following: (1) Implements or interprets a law unless that law or another law specifically authorizes the agency to do so." Petitioner argues that pursuant to N.C. Admin. Code tit. 12, r. 9A.0103(4) (January 1995), the Commission had to interpret and implement sections of the North Carolina General Statutes that establish felony offenses in North Carolina. Conclusions of Law Nos. 4 and 6 in the Commission's Final Decision state that there is sufficient evidence to conclude that petitioner committed the acts necessary to satisfy the elements of N.C. Gen. Stat. §§ 14-54(a) and 14-72(b).

Interpret means, "to explain or tell the meaning of . . . ." Webster's Third New International Dictionary 1182 (1971). Implement means, "to carry out . . . to give practical effect to and ensure of actual fulfillment by concrete measures . . . ." Id. at 1134. In the present case the Commission is not "implementing" the criminal code. Further, the adoption of the "commission of an offense" rule does not constitute an "interpretation" of criminal statutes. The imposition of the rule is merely an approach used to establish minimum standards regarding the moral character of criminal justice officers. The Commission's reference to the criminal statutes is solely for the purpose of providing guidance to officers and applicants. It is not an attempt to interpret the criminal code, but to use pre-established elements of behavior which together constitute an offensive act. The Commission relies on the elements of each offense, as specified by the Legislature and the courts. The Commission then uses a specified criminal offense as a guide for unacceptable conduct regarding behavioral standards. In the present case petitioner committed the acts necessary to satisfy the elements of N.C. Gen. Stat. § 14-54(a) and N.C. Gen. Stat. § 14-72(b). N.C. Gen. Stat. § 14-54(a) provides: "Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. § 14-72(b) provides, "[t]he crime of larceny is a felony, without regard to the value of the property in question, if the larceny is: . . . (2) Committed pursuant to a violation of G.S. 14-51, 14-53, 14-54 or 14-57 . . . ." "The essential elements of felonious breaking or entering are (1) breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." State v. Litchford, 78 N.C. App. 722, 725, 338 S.E.2d 575, 577 (1986). Larceny requires that defendant (1) take the property of another, (2) carry it away, (3) without the owner's consent, and (4) with the intent to deprive the owner of his property. State v. Reeves, 62 N.C. App. 219, 223, 302 S.E.2d 658, 660 (1983).

In the present case, petitioner entered the police station with a stolen key with the intent to take the money seized in the arrest without consent and with the intent to deprive the police of the money. Petitioner committed the actions necessary to constitute the felony of felonious breaking or entering and larceny pursuant to N.C. Gen. Stat. §§ 14-54(a) and 14-72(b).

[3] Petitioner's final assignment of error is that the trial court improperly determined that neither the Commission nor its rules violated petitioner's constitutional rights pursuant to Article IV, Section 3 of the North Carolina Constitution. We disagree.

Article IV, Section 3 of the North Carolina Constitution provides in part, "[t]he General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Court of Justice." "Whether a judicial power is 'reasonably necessary as an incident to the accomplishment of a purpose for which' an administrative office or agency was created must be determined in each instance in the light of the purpose for which the agency was established and in the light of the nature and extent of the judicial power undertaken to be conferred." *State ex rel. Lanier v. Vines*, 274 N.C. 486, 497, 164 S.E.2d 161, 168 (1968).

> The application of Article IV, Section 3 thus requires three questions be answered: (1) For what purposes was the agency created? (2) Which peculiarly "judicial" power has the General Assembly attempted to vest in the agency? and (3) Is the Legislature's grant of such judicial power reasonably necessary as an incident to the accomplishment of the purposes for which the agency was created?

*In the Matter of Appeal from Civil Penalty*, 92 N.C. App. 1, 11, 373 S.E.2d 572, 578, *rev'd on other grounds*, 324 N.C. 373, 379 S.E.2d 30 (1989).

"The purpose of the [North Carolina Criminal Justice Education and Training Standards] commission is to raise the level of competence within the criminal justice community by: (1) Establishing minimum standards for employment and retention of criminal justice personnel; (2) Establishing minimum standards for the training and education of criminal justice personnel . . . ." N.C. Admin. Code Tit.

12, r. 9A.0102 (January 1981). Further, N.C. Gen. Stat. §§ 17C-1, 17C-6 and 17C-10 establish the purposes for which the Commission was created. Second, the disputed judicial power vested in the Commission is the power of the Commission to conduct hearings and to take administrative action involving revocation of a certification issued by the Commission. We hold that the ability to hold hearings is a power that is reasonably necessary for the Commission to accomplish the purposes for which it was created. It is necessary for the Commission to have a means by which to gather evidence and investigate to determine if individuals are complying with the provisions of Chapter 17C.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.