IN RE APPEAL OF JAMES E. RAMSEUR AND R. GENE LENTZ FROM THE DECISION OF THE CABARRUS COUNTY BOARD OF ELECTIONS AND THE PROTEST OF THE CITY OF CONCORD MIXED BEVERAGE REFERENDUM CONDUCTED MAY 3, 1994

No. COA99-802

(Filed 1 August 2000)

**Elections— refusal to disclose vote—failure to show effect on outcome—referendum not invalidated**

The trial court did not err by concluding that petitioners are not entitled to a new election with regard to the City of Concord Mixed Beverage Referendum based on petitioners' failure to meet their burden to show that absent the alleged voting irregularities the referendum would have failed, because: (1) petitioners did not present any new evidence as to the five undisclosed illegal votes, and the Court of Appeals cannot speculate as to a possible result; and (2) petitioners have not set forth evidence that they objected to the five voters' failure to testify or that they attempted to compel such testimony.

Appeal by petitioners from an order entered 11 March 1999 by Judge A. Leon Stanback, Jr. in the Wake County Superior Court. Heard in the Court of Appeals 8 May 2000.

IN RE APPEAL OF RAMSEUR

[139 N.C. App. 442 (2000)]

*Cecil R. Jenkins, Jr. for petitioner appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Susan K. Nichols, for the State Board of Elections, appellee.*

*Everett, Gaskins, Hancock & Stevens, by Hugh Stevens, for respondent appellees.*

LEWIS, Judge.

Petitioners appeal a superior court order affirming a decision of the State Board of Elections, which adopted the Cabarrus County Board of Election's recommended decision that no new election be conducted with regard to the City of Concord Mixed Beverage Referendum. This is the second appeal of this case to this Court. A comprehensive recitation of the facts and procedural history is set forth in *In re Appeal of Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254 (1995) (*"Ramseur I"*), the first appeal brought by petitioners in this case. A mixed beverage referendum was conducted in and for the City of Concord on 3 May 1994. A recount of the votes on 5 May 1994 showed 5000 votes cast in favor of the sale of mixed beverages and 4997 votes cast against the sale of mixed beverages. *Id.* at 522, 463 S.E.2d at 255.

On 13 June 1994, the Cabarrus County Board of Elections ("County Board") found that ten ineligible persons had voted in the referendum. *Id.* When these ten voters were questioned as to how they voted, five declined to tell, three said they voted in favor of the proposition and two said they voted against it. *Id.* at 523, 463 S.E.2d at 255. As a result of these discovered irregularities, the County Board sent its recommended decision for a new election to the State Board of Elections ("State Board"). *Id.* On 16 June 1994, proponents of the referendum appealed to the State Board, which denied the County Board's recommended decision for a new referendum and certified the referendum results. *Id.* at 523, 463 S.E.2d at 256. The superior court affirmed the State Board's certification of the referendum results. *Id.* Thereafter, petitioner appellants filed their first appeal before this Court.

The appellants in *Ramseur I* argued that if the illegal votes *could* have altered the results of the referendum, a new election was required. *Id.* at 524, 463 S.E.2d at 256. Specifically, appellants contended that because five of the ten illegal voters refused to disclose their vote, there was no way to ascertain what the results of the ref-

erendum would have been absent the illegal votes. *Id.* As a result, appellants argued a new referendum was required. *Id.* at 524. In *Ramseur I*, we clarified appellants' statement of the applicable rule: "An election or referendum result will not be disturbed for irregularities absent a showing that the irregularities *are* sufficient to alter the result. The burden of proof is upon the unsuccessful candidate or the opponents of a referendum to show that they *would* have been successful had the irregularities not occurred." *Id.* at 525, 463 S.E.2d at 256-57. Applying this rule to the facts in *Ramseur I*, we stated:

> Here, four out of the five illegal voters who refused to disclose their votes would have had to testify that they voted in favor of the referendum in order for appellants to prevail.
>
> . . . [F]ive of the ineligible voters refused to disclose their vote and appellants did not attempt to compel those voters to testify. At this point, there is no way to determine whether, absent the ten illegal votes, the referendum would have failed.

*Id.* at 525-26, 463 S.E.2d at 257. We also noted that while an honest elector enjoys the privilege of refusing to disclose his vote, " '[i]f an illegal voter can claim the privilege at all, it is because he finds shelter under the very different principle that he cannot be compelled to criminate himself.' " *Id.* at 526, 463 S.E.2d at 257 (quoting *Boyer v. Teague*, 106 N.C. 576, 625, 11 S.E.2d 665, 679 (1890)). Because appellants in *Ramseur I* neither objected to the failure of the five ineligible voters to testify how they voted, nor attempted to compel the five voters to testify, we concluded appellants had not met their burden of proof. *Id.*

Despite appellants' failure to establish error on that issue, *Ramseur I* was remanded for consideration of other voting irregularities. The County Board conducted another review of the referendum and discovered that both an extra ballot from a previous election and an extra absentee ballot had been included in the previous vote count of 5000 votes for and 4997 votes against. Subtracting these ballots changed the referendum results to 4999 votes in favor and 4998 against. This was the only error found on remand.

In the present appeal, appellants' argument is as follows. In order to determine the actual number of votes cast on remand, the State Board had a duty to subtract the five disclosed illegal votes from the total count. When these five votes are subtracted, the result is a tie—

**IN RE APPEAL OF RAMSEUR**

[139 N.C. App. 442 (2000)]

4996 in favor and 4996 against. Because no majority prevails, the referendum proposition fails. As such, the irregularities are sufficient to alter the outcome of the election so that a new election is required. The five remaining illegal votes which have not been disclosed are irrelevant, although it is not clear under what authority. We need only turn to *Ramseur I* to conclude that appellants' argument is without merit.

Although appellants do not address the appropriate standard of review in the present appeal, the core of their argument is that the State Board's decision was based on several errors of law. N.C. Gen. Stat. § 150B-51(b)(3), (4) (1999). As such, our standard of review is *de novo*. *Brooks v. Ansco & Associates*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994).

Contrary to appellants' assertions, the five undisclosed illegal votes are critical to the outcome of this appeal. To reiterate our point in *Ramseur I*, in order to meet their burden, appellants must be able to show that the referendum result *would* have been different had the voting irregularities not occurred. *Ramseur I*, 120 N.C. App. at 525, 463 S.E.2d at 257. This rule requires certainty; precisely, appellants here must establish that three out of the five ineligible voters who refused to disclose their votes voted in favor of the referendum in order to meet their burden. Without disclosure of these five votes, we are not able to determine with certainty whether the voting irregularities are sufficient to alter the result. Indeed, the five undisclosed votes could possibly cause the outcome to go either way. In failing to present any new evidence as to the five undisclosed illegal votes, appellants have asked us to speculate as to a possible result. This is not sufficient under our law.

In 1996, N.C. Gen. Stat. § 163-33(3) (Supp. 1998) was amended to prohibit a board of elections from considering as evidence the testimony of an ineligible voter as to how he voted. At the time of the referendum in this case, however, no law prohibited a board of elections from considering such evidence. Nonetheless, the issue of disclosure is not before us, as appellants have not set forth evidence that they objected to the five voters' failure to testify or attempted to compel such testimony.

We conclude appellants have not met their burden to show that absent the voting irregularities, the referendum would have failed. Accordingly, the superior court correctly concluded appellants are not entitled to a new election.

MUSE v. ECKBERG

[139 N.C. App. 446 (2000)]

Affirmed.

Chief Judge EAGLES and Judge EDMUNDS concur.