An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-833

Filed 4 March 2026

Wake County, No. 24CV002019-910

CHARLES GREGORY CUMMINGS, Petitioner,

v.

NORTH CAROLINA STATE BOARD
OF ELECTIONS, Respondent,

and

ALLEN G. DIAL, Intervenor-Respondent.

Appeal by petitioner from order entered 18 March 2025 by Judge Matthew T. Houston in Wake County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *The Charleston Group, by R. Jonathan Charleston and Jose A. Coker, for petitioner-appellant.*

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Terence Steed and Special Deputy Attorney General Mary L. Lucasse, for the State.*

> *Cheshire Parker Schneider & Abrams, PLLC, by J. Hart Miles, Elliot S. Abrams, and Erin L. Wilson, for intervenor-respondent-appellee.*

FLOOD, Judge.

- 1 -

Petitioner Charles Gregory Cummings appeals from the trial court's order affirming the North Carolina State Board of Elections' (the "State Board") order denying his election protest appeal from Robeson County. On appeal, Petitioner argues the trial court, first, erred in affirming the State Board's order, and second, abused its discretion by denying the Petitioner's motion to consider additional evidence under N.C.G.S. § 150B-49. Upon careful review, we conclude the trial court did not err in affirming the State Board's order and did not abuse its discretion in denying Petitioner's motion to consider additional evidence.

## I. **Factual and Procedural Background**

Petitioner and Intervenor-Respondent Allen Dial were candidates in the mayoral election for Pembroke, North Carolina, held on 7 November 2023. The official tally indicated that Dial received 197 votes, and Petitioner received 178 votes.

On 22 November 2023, Robeson County announced on its Facebook page that its offices would close that day at 4:00 p.m., rather than 5:00 p.m., in anticipation of the Thanksgiving holiday, making no distinction between Robeson County government offices and the Robeson County Board of Elections (the "County Board"). That same day at 5:13 p.m., Petitioner filed an election protest suit, contending that "at least sixteen (16) ineligible voters voted[,]" which could potentially change the outcome of the election. Petitioner further noted his protest would be supplemented as more information became available and "further ineligible voters are identified."

The County Board administratively dismissed Petitioner's protest on 28 November 2023, stating Petitioner failed to: "file in accordance with N.C.G.S. §163-182.9"; "include evidence which, if true[,] would substantiate the probable occurrence of an outcome determinative defect in the manner in which voters were counted or results tabulated, or the probabl[e] occurrence of an outcome determinative violation of election law, irregularity, or misconduct"; "include all subsequent submissions"; and "allege facts sufficient to constitute substantial evidence of the occurrence of an outcome determinative violation of election law, irregularity, or misconduct."

On 28 December 2023, Petitioner appealed to the State Board and filed an amended election protest form. Petitioner's amended election protest appeal alleged there were seventeen ineligible voters and requested the State Board to consider prior Pembroke election irregularities:

> The mayoral election in Pembroke has faced challenges regarding voter irregularities dating back to 2013. The North Carolina State Board of Elections ordered a new election in 2013 and 2015 as a result of improperly cast ballots involving Affected Party in this protest, Mr. Allen Dial. I prevailed in the mayoral election for the Town of Pembroke after the 2013 and 2015 voting irregularities were corrected.

The State Board's Executive Director, Karen Brinson Bell, recommended to the State Board that they deny Petitioner's appeal for Petitioner's "failure to timely file the protest with the Robeson County Board of Elections and a failure to allege evidence[] which[,] if true, [] substantiates the probable occurrence of an outcome-

determinative violation of election law, irregularity, or misconduct." She concluded "[t]he protest was filed after the deadline[,] and no credible or relevant allegation has been made that any actions by the Robeson County Board of Elections or a third-party prevented [Petitioner] from filing it on time"; and, furthermore, that "[t]he protest included barebones allegations regarding voters['] ineligibility. It alleges 16 ineligible voters cast a ballot when the vote margin is 19." The State Board then unanimously denied Petitioner's appeal on 8 January 2024.

On 18 January 2024, Petitioner filed with the trial court a combined verified petition for judicial review, motion to present additional evidence, and motion for stay of decision. On 22 January 2024, the trial court granted Petitioner's motion to stay after making the following relevant findings of fact:

> 4. On November 22, 2023, Robeson County announced on its Facebook pages that its offices would close at 4:00 PM on November 22, 2023 in anticipation of the Thanksgiving holiday. There was no distinction made between Robeson County government offices and the County Board of Elections. The announced closure was one (1) hour earlier than the deadline for filing an election protest pursuant to N.C.[G.S.] § 163-182.3.
>
> 5. On November 22, 2023 at 5:13 PM, Petitioner filed his Protest before the County Board of Elections pursuant to. § 163-182.9 alleging voter irregularities of at least sixteen (16) voters in the Mayoral election;
>
> . . . .
>
> 13. There is evidence that elections involving the Town of Pembroke were overturned in 2013 and 2015 by the State Board of Elections as a result of voter irregularities,

> involving the same parties and similar allegations, including ineligible voters casting ballots.
>
> 14. 08 NCAC 02.0114(a)(5) requires that consideration be given to the totality of the circumstances relating to the manner of conduct involving the subject election, which includes consideration of the manner of conduct of prior elections.
>
> 15. The plain language of the State Board of Elections Administrative Dismissal does not indicate that consideration was given to the totality of circumstances.

The trial court concluded that "Petitioner is likely to prevail in his appeal before this [c]ourt" and that "a stay of the Certification is necessary because there is a history of voter irregularities in Robeson County and the State Board of Elections has the authority to conduct a hearing on the Protest pursuant to N.C.[G.S.] § 163-182.12."

Dial then filed a motion to intervene on 19 February 2024, submitting nineteen affidavits of residency with his motion from persons Petitioner had challenged were not eligible to vote. Many of these persons indicated on their affidavit that they were homeless but had lived in the Town of Pembroke some amount of time between one and twenty years.

After a consultation among the parties, the trial court entered a consent order allowing Dial to intervene, remanding "to the [C]ounty [B]oard for an evidentiary hearing on the merits of the election protest[,]" and allowing Petitioner "to present additional evidence accordingly." The County Board held evidentiary hearings on 25 June 2024 and 8 July 2024.

During the first hearing, Petitioner presented evidence of the prior elections in Pembroke where irregularities were found. When Petitioner questioned Dial about the affidavits he submitted with his motion to intervene, Dial admitted that Attorney Gary Locklear had assisted him in preparing at least one of the affidavits. Although Attorney Locklear retired in April 2024, Attorney Locklear was formerly under contract with the Robeson County Attorney's Office at the time he assisted Dial in preparing affidavits. The hearing was then recessed until 8 July 2024 to provide the Robeson County Attorney's Office time to consult with the North Carolina State Bar on whether there was a conflict of interest requiring the Robeson County Attorney's Office to be recused from this matter.

Attorney Robert Davis from the Robeson County Attorney's Office emailed the North Carolina State Bar an inquiry on the matter. In part, Attorney Davis wrote:

> During the protest hearing on June 25, 2024 a witness testified that Gary had helped him prepare an affidavit that was dated February, 2024, a time when Gary was working as an assistant county attorney. Since that raised a possible conflict, Rob, who was representing the [County Board] at this hearing, convened a closed session and explained the issue of the possible conflict to the [County Board] members. After closed session, Rob announced that the hearing was being recessed to consider the possible conflict and get an opinion from the State Bar.
>
> Question 1 - Is there a conflict for Rob or Ed[, another Robeson County attorney,] continuing to represent the [County Board]?

The North Carolina State Bar reviewed the Robeson County Attorney's Office's inquiry and advised that they did "not think you have a conflict that would prohibit you from proceeding." The evidentiary hearing resumed on 8 July 2024, but Petitioner, through his counsel, maintained his objection to this conflict-of-interest issue he had raised, explaining:

> I'm not sure that the State Bar said that there was no conflict because I think the fact pattern was not -- did not include all of the considerations. Now the State Bar opinion is simply advisory. That is not an -- an opinion of a court or anything of that nature. And so we would restate our objection for the record, that we believe that there is a conflict and that is imputed to the office of the county -- the county attorney.

At the resumed hearing, Petitioner questioned Dial about commercial properties he owned in Pembroke, as several of the alleged ineligible voters stated in their affidavits that they lived at these properties. Dial testified that he helped the people who lived at his various properties register to vote. Dial explained that, for several of the alleged ineligible voters living on his property, he "picked them up and carried them to vote[,]" but he denied that he coerced them or paid them. Further, Dial admitted that, after the election was contested by Petitioner, he went around to the contested voters and had his daughters fill in and notarize "the majority" of the affidavits. Additionally, Petitioner testified that he had hired Investigator Michael East to investigate the contested voters' residences around six months after the election, and two months before the present hearing. Petitioner explained

Investigator East went to the voters' addresses but that "he was not able to find [the contested voters]."

After Petitioner's presentation of evidence, Dial requested the County Board dismiss Petitioner's election protest, which the County Board unanimously granted and subsequently filed its decision on 15 July 2024 at 5:47 p.m. The County Board made several findings of fact, including that Petitioner had "offered no testimony showing that any of the challenged voters were in some other way ineligible to vote in the Town of Pembroke mayoral election on November 7, 2023"; "had no direct knowledge that any of the challenged voters had been paid for their vote"; had "offered no testimony that any voter was given anything of value for their vote"; and "did not subpoena or otherwise bring any of the challenged voters to the hearing to testify."

Petitioner then appealed to the State Board on 22 July 2024. In his appeal, Petitioner requested the State Board consider additional evidence that "was not presented to and considered by the [C]ounty [B]oard[,]" including, *inter alia*, zoning information about Dial's property, "which allows for commercial uses and does not permit residential uses"; an editorial post written by Attorney Locklear; and the fact pattern sent to the North Carolina State Bar, because "the details of the facts concerning the conflict were not included in the Order filed by the Robeson County Board[.]" The State Board "unanimously voted to deny the request from [Petitioner] to supplement the record with information and documentation that was not presented to the [C]ounty [B]oard and was not subject to cross-examination."

The State Board concisely restated Petitioner's four arguments:

12. . . . First, in his appeal form[, Petitioner] makes note of the [C]ounty [B]oard's order being filed at 5:47 p.m. on the fifth business day after the hearing when 08 NCAC 02.01102 required it to be filed by 5:00 p.m. on that date. [Petitioner] states that this means "the filing of the Order fails to comply with applicable law." Second, [Petitioner] contends the involvement of Gary Locklear, a former contract attorney with the county attorney's office in Robeson County who separately assisted and publicly supported Dial, resulted in a conflict of interest that tainted the protest proceedings or otherwise meant the county attorney's office should not have advised the county board on this matter. Third, [Petitioner] contends that Dial's affidavits, submitted to the trial court in the first appeal and discussed in the evidentiary hearing, were drafted and notarized by Dial's daughters, which violates notary laws that prohibit notarizing a document in which the notary has an interest in the subject matter. Finally, [Petitioner] essentially contends that the [C]ounty [B]oard came to the wrong decision, because in his view, he did submit enough evidence to show that there had been a violation of election law or irregularity or misconduct in the election, such that doubt had been cast on the results of the election.

The State Board heard arguments on 5 September 2024; on 23 September 2024, it entered an order (the "Final Decision"), finding:

22. The transcript shows that the [C]ounty [B]oard considered the totality of the circumstances, including all of the record evidence and testimony before it, which included the 2013 and 2015 election protests, to reach the conclusion that [Petitioner] had not met his burden of proof in this election protest.

23. First, while the [C]ounty [B]oard's filing of its written decision did occur 47 minutes after the deadline in 08 NCAC 02.0110, [Petitioner] does not state what remedy

- 9 -

there should be for such a procedural error, and he does not argue that he suffered prejudice from a delay of 47 minutes. He does not argue that he failed to receive notice of the county board's decision at the hearing or within 24 hours of the filing of the written decision. Accordingly, there is no reversible error attributable to the county board's decision being filed in its office 47 minutes past the deadline to do so.

24. Second, the record reflects that the [C]ounty [B]oard properly concluded the involvement of a county government contract attorney, who recused himself from participation in elections matters involving Dial prior to assisting him with drafting an affidavit in this protest appeal, did not create any conflict in the proceedings on the protest. And to the extent that [Petitioner] contends the county government contract attorney's actions supporting Dial in this protest in 2024 somehow tainted the election in November 2023, [Petitioner] has not provided evidence that the contract attorney's actions had any effect on the results of the election itself.

25. Third, [Petitioner] generally states that Dial's daughters serving as notaries for affidavits submitted by Dial "appears to violate NC laws pertaining to notaries which prohibits a notary from having an interest in the subject matter." But he provides no specific citation for the notary law that he claims was violated, and it appears that the most likely law to which he speaks is not directly applicable. *See* N.C.G.S. § 10B-20(c)(6).

. . . .

27. Finally, the record as a whole shows that the [C]ounty [B]oard could properly conclude that [Petitioner] failed to meet his burden in this protest on the merits. The protest mainly focused on the allegations that voters may not have properly participated in the election, either because they were not eligible to do so or because Dial had engaged in a scheme to compensate them for voting for him. But the record in this matter supports the [C]ounty [B]oard's

conclusion that [Petitioner] failed to present substantial evidence establishing that the voters in question, who are mostly without traditional residences, did not reside within the town of Pembroke or otherwise establishing that the voters in question participated in some quid pro quo for their vote.

. . . .

30. Moreover, even if for argument's sake [Petitioner] had demonstrated that the voters in question should not have been permitted to vote, he has failed in the past 10 months since the election to obtain any evidence that such issues with voters in the election extended beyond those so identified.

31. The State Board has the authority under N.C.G.S. § 163-182.13 to order a new election when there are irregularities that taint the results of an election and cast doubt on its fairness. Indeed, the State Board has exercised this authority when the circumstances warrant it. But this is a grave remedy that is "not lightly employed by the State Board." See IN RE: Appeals and Referrals of Election Protests of John Jonczak and James Yokeley, Jr., 38 (December 30, 2022).[] In the 10 intervening months since the November 7, 2023, Town of Pembroke Mayoral election, [Petitioner] has failed to establish why such a weighty remedy must be employed for this particular election.

32. Accordingly, in considering the whole record by taking into account the evidence that detracts from the [C]ounty [B]oard's decision as well as the evidence that tends to support it, there is substantial evidence in the record to justify the [C]ounty [B]oard's decision to dismiss the protest. . . .

The State Board unanimously denied Petitioner's election protest.

Petitioner then appealed to the trial court to review the State Board's decision.

The trial court held a hearing on 20 December 2024. At the hearing, Petitioner

presented evidence of the prior history of election irregularities in Pembroke; the trial court's findings of fact in its order granting Petitioner's stay of election certification; Attorney Locklear's assistance to Dial; Dial's assistance of registering and taking several people from his properties to vote; and Dial's daughters' notarization of the affidavits.

On 18 March 2025, the trial court entered an order finding that Petitioner did not "assign error to any findings of fact[,]" and after "consider[ing] the whole record[,]" concluding "the State Board's Final Decision should be, and appropriately is, affirmed." The trial court also denied Petitioner's request to present evidence to the trial court and to remand to the State Board for presentation of additional evidence. Petitioner timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction from a final judgment of a superior court pursuant to N.C.G.S. § 7A-27(b)(1) (2023).

## III. <u>Analysis</u>

On appeal, Petitioner argues the trial court (A) erred in affirming the State Board's Final Decision, and (B) abused its discretion by denying his motion to consider additional evidence under N.C.G.S. § 150B-49. We address each argument, in turn.

### A. State Board's Final Decision

Petitioner first argues the trial court erred in affirming the State Board's Final Decision. Specifically, Petitioner contends the trial court erred because (1) "it did not set forth sufficient information to reveal the scope of its review"; (2) "it did not address the timeliness of the County Board's denial order"; (3) "it did not address evidence regarding voters who listed their residences as properties owned by Dial"; (4) it did "not remand[] to the State Board to order a new election"; and (5) its decision "was arbitrary and capricious."

"Under our review of a superior court's order entered upon review of an agency decision, we must first determine whether the trial court exercised the appropriate scope of review and, if appropriate, . . . decide whether the trial court did so properly." *eDealer Servs., LLC v. N.C. Dep't of Transportation*, 293 N.C. App. 27, 31 (2024) (citation modified). "The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal." *Powell v. N.C. Crim. Just. Educ. and Training Standards Comm'n*, 165 N.C. App. 848, 851 (2004) (citation and internal quotation marks omitted). "It is well settled that in cases appealed from administrative tribunals, questions of law receive de novo review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test." *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 659 (2004) (citation modified); *see also Appeal of Ramseur*, 120 N.C. App. 521, 524 (1995) ("If it is alleged that the agency's decision was based on an error of law, then *de novo* review is required. If, however, it is alleged that the agency's

decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test.").

"Under a de novo review, the reviewing court considers the matter anew and freely substitutes its own judgment for the agency's." *eDealer Servs., LLC*, 293 N.C. App. at 33 (citation modified). "[W]hen applying the whole record test, the reviewing court may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo.*" *Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 69–70 (2010) (citation modified). "Rather, a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Watkins v. N.C. State Bd. of Dental Examiners*, 358 N.C. 190, 199 (2004) (citation omitted). "Substantial evidence is defined as relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). "In reviewing the sufficiency and competency of evidence before the Superior Court, the question is not whether the evidence supported the Superior Court's order. The question is whether the evidence before the [agency] was supportive of the [agency's] decision." *Thompson v. Union Cnty.*, 283 N.C. App. 547, 552 (2022) (citation modified).

### 1. Scope of Review

Petitioner first argues the trial court erred because "it did not set forth sufficient information to reveal the scope of its review." Petitioner contends the trial court's order "fails to show how the standard [of the whole record test] was applied[,]" and "[w]ithout such analysis, this Court cannot engage in meaningful review." Petitioner argues that, "[f]or example, the [trial court] did not address Locklear's conflict of interest, except in a cursory way" when it found "[t]he hearing resumed on July 8, 2024, at which point the [Robeson C]ounty [A]ttorney's [O]ffice asserted that it had consulted with the North Carolina State Bar and determined that there was no conflict, while Petitioner maintained his objection and contended that a conflict existed."

We review de novo whether "the Superior Court correctly applied the appropriate standards of review." *Thompson*, 283 N.C. App. at 554. We have previously explained that "[t]he trial court, when sitting as an appellate court to review an administrative agency's decision, must only set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Id.* at 553 (citation modified). "Separate findings of fact are not required . . . ." *Id.* In other words, the trial court's obligation to show that it "correctly applied the appropriate standard[] of review[,]" *id.* at 554, does not require that it itemize its review of the whole record; it requires that the trial court demonstrate it *used* the whole record test.

Here, the trial court explained in its order that it "ha[d] thoroughly reviewed and considered the whole record and Final Decision, including the evidence supporting the Final Decision as well as the evidence fairly detracting from the weight of the supporting evidence, such as contradictory evidence and evidence from which conflicting inference could be drawn." Further, although the trial court did not explicitly address the issue of Locklear's conflict of interest, "[s]eparate findings of fact are not required[.]" *See id.* at 553. The trial court reviewed the State Board's Final Decision, which found that "[Petitioner] has not provided evidence that the contract attorney's actions had any effect on the results of the election itself." Upon our de novo review of the Record, we conclude the trial court properly applied the whole record test; thus, this argument is overruled.

### 2. Timeliness of County Board's Order

Petitioner next argues the trial court erred because "it did not address the timeliness of the County Board's denial order." Specifically, Petitioner contends the trial court "failed to ensure that the administrative agency followed the rules it promulgates[,]" and "underscore[d] the arbitrariness of its decision." Petitioner claims "the County Board's failure to timely file its decision should render the decision void *ab initio*[.]"

In *Farlow v. N.C. State Bd. of Chiropractic Examiners*, we were faced with a similar issue, as the appellant argued "it was error for the Superior Court to affirm the order of the [agency] because the [agency's] decision was not timely made." 76

N.C. App. 202, 207 (1985). We acknowledged that "a party has the right to require an administrative agency to follow its own rules if its failure to do so would result in a substantial chance that there would be a different result from what the result would be if the rule were followed." *Id.* at 208. We held, however, that "the result was not changed because the [agency] did not follow its own rule" of timeliness and, thus, overruled the argument since it was not prejudicial error. *Id.*

Similarly, here, the County Board's forty-seven-minute late filing did not affect the result of its decision; thus, there is no prejudicial error. *See id.* at 208. Accordingly, this argument is overruled.

### 3. Voter Evidence

Petitioner next argues the trial court erred because "it did not address evidence regarding voters who listed their residences as properties owned by Dial." Specifically, Petitioner contends that, "[b]y ignoring this . . . , the [trial court's] order failed to consider evidence that detracted from the State Board's decision, thereby prejudicing [Petitioner]."

"When an unsuccessful candidate seeks to invalidate an election, the burden of proof is on him to show that he would have been successful had the irregularities not occurred." *Appeal of Harper*, 118 N.C. App. 698, 702 (1995) (citation omitted); *see also Appeal of Ramseur*, 120 N.C. App. at 525 ("The burden of proof is upon the unsuccessful candidate or the opponents of a referendum to show that they *would* have been successful had the irregularities not occurred." (emphasis in original)).

Here, the State Board found that "[Petitioner] failed to present substantial evidence establishing that the voters in question, who are mostly without traditional residences, did not reside within the town of Pembroke or otherwise establishing that the voters in question participated in some quid pro quo for their vote." Moreover, the State Board found that, "even if for argument's sake [Petitioner] had demonstrated that the voters in question should not have been permitted to vote, he has failed in the past 10 months since the election to obtain any evidence that such issues with voters in the election extended beyond those so identified."

Although the trial court did not make its own separate finding of fact regarding this issue—which it was not required to do, *see Thompson*, 283 N.C. App. at 553—the trial court acknowledged it "ha[d] thoroughly reviewed and considered the whole record and Final Decision, including the evidence supporting the Final Decision as well as the evidence fairly detracting from the weight of the supporting evidence, such as contradictory evidence and evidence from which conflicting inference could be drawn." In doing so, the trial court concluded the State Board's Final Decision was supported by "competent, material, and substantial evidence[.]"

Further, under our review of the whole Record, *see Watkins*, 358 N.C. at 199, we cannot say the State Board's decision to deny Petitioner's appeal was unsupported by substantial evidence where Petitioner failed to show he would have been successful had the contested voters been dismissed, since the margin for Dial was

greater than Petitioner's challenged votes, *see Appeal of Harper*, 118 N.C. App. at 702. Accordingly, this argument is overruled.

### *4. Remanding for New Election*

Petitioner next argues the trial court "erred by not remanding to the State Board to order a new election." Specifically, Petitioner contends that, because "a cloud of suspicion is present undermining the election's integrity—especially given the past pattern of Pembroke elections involving Dial[—]" the trial court erred by not remanding to the State Board to order a new election.

Under our statutes, the State Board of Elections

> *may* order a new election, upon agreement of at least four of its members, in the case of any one or more of the following:
>
> (1) Ineligible voters sufficient in number to change the outcome of the election were allowed to vote in the election, and it is not possible from examination of the official ballots to determine how those ineligible voters voted and to correct the totals.
> (2) Eligible voters sufficient in number to change the outcome of the election were improperly prevented from voting.
> (3) Other irregularities affected a sufficient number of votes to change the outcome of the election.
> (4) Irregularities or improprieties occurred to such an extent that they taint the results of the entire election and cast doubt on its fairness.

N.C.G.S. § 163-182.13(a) (2023) (emphasis added). Our statute is clear; the State Board *may* order a new election if it finds "[i]rregularities or improprieties occurred

to such an extent that they taint the results of the entire election and cast doubt on its fairness[,]" but it is not required to do so. *Id.*

Petitioner contends that "the clarity of the principle that irregularities must be sufficient to alter an election result[, pursuant to *Appeal of Ramseur*, 120 N.C. App. at 525,] evaporates when 'a cloud of suspicion has been cast' over an election's result." To support his contention, Petitioner relies on *Appeal of Jud. Rev. by Republican Candidates for Election in Clay Cnty.*, 45 N.C. App. 556, 573 (1980). In *Clay County*, we affirmed the State Board's decision to order a new election, reasoning that "[w]hile[,] in the case before us, there is no showing that the violations contained in the findings of fact were sufficient to change the outcome of the election, certainly a cloud of suspicion has been cast on all the absentee ballots cast in the election." *Clay Cnty.*, 45 N.C. App. at 573 (emphasis omitted). Our reasoning in *Clay County*, however, does not invalidate the State Board's present decision not to order a new election where its statutory powers grant it discretion to do so but do not mandate that it must order a new election. Furthermore, under our review of the whole Record, *see Watkins*, 358 N.C. at 199, we cannot say the State Board's decision not to grant a new election was not supported by substantial evidence. Petitioner failed to show that more than one contested voter did not reside in the Town of Pembroke; thus, there were no irregularities so "exten[sive] that they taint[ed] the results of the entire election and cast doubt on its fairness[,]" N.C.G.S. § 163-182.13(a)(4). Accordingly, this argument is overruled.

### 5. *Arbitrary and Capricious*

Petitioner next argues the trial court's decision is "arbitrary and capricious." Petitioner contends that since "the State Board declined to consider additional evidence, order a new election, or evaluate the cumulative effect of irregularities in the [e]lection[,]" the State Board's decision "is arbitrary, capricious, and unsupported by substantial evidence."

After a review of the whole Record, and as discussed above, we discern the trial court's decision was not arbitrary and capricious. Accordingly, this argument is overruled.

## B. Additional Evidence

Petitioner argues finally that the trial court "abused its discretion by not remanding this case to the State Board to take additional evidence." Specifically, Petitioner contends the State Board should have considered "four categories of additional evidence: (1) an email from Robeson County [Attorney's Office] to the State Bar; (2) the employment contracts of Locklear; (3) the affidavit of [Investigator] East, dated 4 September 2024; and (4) records of the 2013 and 2015 Pembroke election protests."

We review a motion for additional evidence in an election protest for an abuse of discretion. *See* N.C.G.S. § 150B-49 (2023); *see also* N.C.G.S. § 163-182.11(b)(3) (2023). We have explained that, "under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to

support the administrative agency's findings and conclusions[,]" and "[w]hen the trial court applies the whole record test, . . . it may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter de novo." *Brown v. Fayetteville State Univ.*, 269 N.C. App. 123, 127 (2020).

On an appeal from a county board decision regarding an election protest, the State Board "*may* . . . [r]eceive additional evidence and then decide the appeal on the basis of the record and that additional evidence." N.C.G.S. § 163-182.11(b)(3) (emphasis added). On appeal from the State Board to the superior court, the aggrieved person

> may apply to the court to present additional evidence. If the court is satisfied that the evidence is material to the issues, is not merely cumulative, and could not reasonably have been presented at the administrative hearing, the court may remand the case so that additional evidence can be taken.

N.C.G.S. § 150B-49. In discussing N.C.G.S. § 150B-49, this Court has previously held that "if the evidence is 'material,' 'not merely cumulative,' and 'could not reasonably have been presented at the administrative hearing,' the superior court *must* remand the case . . . ." *Pamlico Tar River Found., Inc. v. Coastal Res. Comm'n of State*, 103 N.C. App. 24, 30 (1991) (emphasis added).

Here, the inquiry from the Robeson County Attorney's Office to the State Bar regarding Attorney Locklear's actions was emailed to the County Board prior to the

beginning of the 8 July hearing; however, the State Board rejected receiving this email as additional evidence. The State Board found that this email evidence would not be material since "[Petitioner] has not provided evidence that the contract attorney's actions had any effect on the results of the election itself." The trial court could properly conclude this finding was supported by substantial evidence where the Record shows the contention of Attorney Locklear's conflict of interest in assisting Dial with preparing an affidavit took place after the election, and thus, a reasonable mind might accept this conflict had no effect on the results of the election itself. *See Watkins*, 358 N.C. at 199.

For the records of the 2013 and 2015 Pembroke election protests, the State Board already had this evidence before it. It found that the County Board hearing "transcript shows that the [C]ounty [B]oard considered the totality of the circumstances, including all of the record evidence and testimony before it, which included the 2013 and 2015 election protests, to reach the conclusion that [Petitioner] had not met his burden of proof in this election protest." Instead, Petitioner argues that "[w]hat remains unclear is whether the full hearing transcripts were considered[.]" Petitioner, however, has failed to argue why the transcripts are "not merely cumulative, and could not reasonably have been presented at the administrative hearing," pursuant to N.C.G.S. § 150B-49.

We next turn to the employment contracts of Locklear and the affidavit of Investigator East. First, regarding the employment contracts, Petitioner argues that

> [t]his evidence is not cumulative because the only reference to conflicts in the record was [Attorney Rob] Davis's statement at the 8 July 2024 hearing that the State Bar found no conflict for his office. That opinion did not address Locklear's involvement. Locklear's contracts and Dial's admissions therefore provide new and important evidence that [Petitioner] could not reasonably have discovered before the County Board proceedings.

Per N.C.G.S. § 163-182.11(a), "[t]he appeal to the State Board must be in writing." N.C.G.S. § 163-182.11(a) (2023). Petitioner failed to include this evidence in his written request to the State Board. Even if Petitioner had properly included this evidence in his appeal, Petitioner has failed to show this evidence was "material" pursuant to N.C.G.S. § 150B-49. The State Board, as stated above, found that "[Petitioner] has not provided evidence that the contract attorney's actions had any effect on the results of the election itself[,]" and thus, the trial court did not err in affirming the State Board's decision not to hear this additional evidence. *See Pamlico Tar River Found.*, 103 N.C. App. at 30.

Second, regarding Investigator East's affidavit, Petitioner claims this evidence is material, not merely cumulative, and "could not have been presented at the County Board hearings on 25 June and 8 July 2024 because it was not executed until 4 September 2024—after both hearings concluded." Similar to the employment contracts, Petitioner failed to include this evidence in his written request to the State Board. Even if Petitioner had properly included this evidence in his appeal, Petitioner does not support his argument that the affidavit could not have been presented at the

County Board hearing; in fact, the contents of the affidavit involving Investigator East's investigation into the contested voters' residences was conducted two months before the hearing. Further, Petitioner testified at the County Board hearing as to Investigator East's investigation, explaining Investigator East went to the voters' addresses and "he was not able to find [the contested voters]." Thus, the trial court did not err in affirming the State Board's decision not to hear this additional evidence, where the affidavit could have been executed and presented before the County Board and where there is evidence in the Record that the affidavit is cumulative, as Petitioner already testified as to similar contents of Investigator East's investigation.

Accordingly, because Petitioner did not demonstrate the additional evidence was "'material,' 'not merely cumulative,' and 'could not reasonably have been presented[,]'" the trial court was not required to remand the case for additional hearing. *Pamlico Tar River Found.*, 103 N.C. App. at 30; N.C.G.S. § 150B-49. We thus conclude the trial court did not abuse its discretion by failing to remand to the State Board to hear additional evidence, and this argument is overruled.

## V. **Conclusion**

For the foregoing reasons, we conclude the trial court did not err in affirming the State Board's Final Decision, nor did it abuse its discretion by failing to remand to the State Board to hear additional evidence.

AFFIRMED.

Judge GORE concurs.

Judge STROUD concurs by separate opinion.

Report per Rule 30(e).

STROUD, Judge, concurring.

While I fully concur with the majority opinion, I write separately regarding my concern that this case may end up being a user's guide on how to enlist people in non-traditional housing as voters to help you win your election. That's not this Court's fault; that's just the practical effect of the application of the law to these facts. And given the transient living circumstances of some of these voters, challenging a voter's registered domicile after an election may prove to be a practical impossibility. This same problem could exist for any voter with non-traditional housing, but here the direct involvement of the candidate adds another layer of concern. Allowing a candidate to register voters who live—at least sometimes—rent free on his own commercial property, *and* allowing the candidate to serve as their mail conduit, *and* then to take them to vote, raises at least an appearance of serious questions about the election's fairness. True, he didn't directly pay them for their votes or tell them how to vote, but did he really need to? "[A]t least 16 voters" may not sound like a big deal, but this was an election won by 19 votes. This small number does not mean these alleged irregularities are unimportant for the entire State. It is possible for an election to be tied and decided by "a method of random selection to be determined by the State Board of Elections" such as a coin flip. N.C. Gen. Stat. § 163-182.8 (2023).

- 27 -

The same rules apply statewide to all elections. This case shows the current statute and rules allowing registration in this manner, with no meaningful way to confirm a voter's address or domicile after an election, opens the door wide to mischief in our elections.

I appreciate that technically, even without these challenged voters, Dial would have won this election. The result of this election might not change, thanks to the three-vote margin, but it still demonstrates a potentially effective but questionable tactic for future elections. Our election laws must accommodate the rights of voters who lack traditional housing, but these laws should at least attempt to prevent a candidate—or anyone working for a candidate—from taking advantage of the unfortunate circumstances of these voters to win an election.

North Carolina General Statute § 163-57(1)(c) defines the residence for these voters broadly and allows a separate mailing address:

> In the event that a person's residence is not a traditional residence associated with real property, then the location of the usual sleeping area for that person shall be controlling as to the residency of that person. Residence shall be broadly construed to provide all persons with the opportunity to register and to vote, including stating a mailing address different from residence address.

N.C. Gen. Stat. § 163-57(1)(c) (2023).

Sadly, this case may support and encourage candidates to recruit and register voters lacking traditional housing to use both a physical address and a mailing address owned or provided by the candidate or his associates. In small elections like

- 28 -

this one, these efforts may provide a winning margin. And the opposing candidate in such a small election may not have the financial ability to investigate or hire attorneys to contest the questionable voters. But under the existing law, we cannot remedy this election, nor can we prevent the same thing from happening again. I encourage the North Carolina General Assembly and the State Board of Elections to note the issues highlighted by this case and consider changes to the law necessary to protect public trust and confidence in our elections.